DETROIT AUTOMOBILE INTER-INSURANCE EXCHANGE v
HIGGINBOTHAM

Docket No. 78-1130. Submitted November 7, 1979, at Detroit.—Decided February 5, 1980. Leave to appeal applied for.

Defendant Rudy Higginbotham was injured while driving her automobile which was insured by plaintiff, Detroit Automobile Inter-Insurance Exchange (DAIIE), when her estranged husband, defendant Boyd N. Higginbotham, driving his own car which was separately insured by DAIIE, forced her to the curb, trapped her in her car and shot her several times with a revolver. Ruby Higginbotham informed DAIIE that she had a claim against her husband arising out of the incident and filed suit against Boyd for damages. Boyd failed to respond and Ruby notified DAIIE of the lawsuit and Boyd's failure to answer. DAIIE informed Boyd that no coverage would be afforded him under his policy. DAIIE asked Boyd to sign a reservation of rights intended to permit it to defend Boyd without waiving any rights or defenses under the insurance contract, but Boyd refused to sign. DAIIE also informed Ruby of its intention to defend the suit subject to a reservation of rights and asked her to separate the damages caused by the collision from those caused by the assault. She refused. A default judgment was entered against Boyd. DAIIE later appeared and moved to set aside the default and sought an order requiring it to appear and answer. The court denied the motion. Prior to the entry of the default judgment plaintiff filed a separate action against defendants in Wayne Circuit Court to declare that it was not

REFERENCES FOR POINTS IN HEADNOTES

[1] 7 Am Jur 2d, Automobile Insurance §§ 160-163.
   Allegations in third person's action against insured as determining
   liability insurer's duty to defend. 50 ALR2d 458.
[2] 47 Am Jur 2d, Judgments § 1198.
   Doctrine of res judicata as applied to default judgments. 77 ALR2d
   1410.
[3] 7 Am Jur 2d, Automobile Insurance §§ 83, 84.
   44 Am Jur 2d, Insurance § 1247 et seq.
[4] 7 Am Jur 2d, Automobile Insurance §§ 41, 42, 80 et seq.
[5] 7 Am Jur 2d, Automobile Insurance § 82.

liable under its policy with Boyd for damage arising out of his assault upon Ruby. Ruby counterclaimed for benefits under her insurance contract and moved for summary judgments on the complaint and counterclaim. Plaintiff also filed motions for summary judgment. The court, Joseph B. Sullivan, J., granted plaintiff's motions and denied Ruby's. Ruby Higginbotham appeals. *Held:*

1. Absent a request, an insurer has no duty to defend an insured, and where no request is made it is not bound in any way by a lawsuit between the insured and a third party on the ground that it failed to defend. Plaintiff is not estopped to deny liability for failure to defend.

2. Collateral estoppel applies to default judgments; however, a default judgment is conclusive only as to matters essential to support the judgment. Plaintiff is not estopped to deny liability by the operation of the doctrine of collateral estoppel even if the doctrine were applicable to this case.

3. An injury is no less an accident where it is intentionally inflicted by an insured upon another, except where the injured party is an aggressor in a fight or blameable for the injuries received therein. The injuries were accidentally sustained. Further, the policy's exclusion of intentionally inflicted injuries from coverage does not bar recovery. An exclusionary clause in an automobile insurance policy excluding from liability any coverage required by statute to be included is invalid and unenforceable. An automobile insurance policy may not exclude from coverage liability for intentionally caused harm. However, there must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile to sustain a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of an automobile. The causal connection must be more than incidental, fortuitous or "but for", and the injury must be foreseeably identifiable with the normal use, maintenance or ownership of the vehicle. Assault by an armed assailant upon the driver of a vehicle is not the type of conduct "reasonably identifiable" with the use of the vehicle, and Ruby's injuries occurring as a result of Boyd's assault upon her were not foreseeably identifiable with the normal use of a motor vehicle and are not covered by the policies.

Affirmed.

1. INSURANCE — LAWSUITS — INJURIES — DUTY TO DEFEND — RE-
    QUESTS — JUDGMENTS — BINDING EFFECT.
    Absent a request, an insurer has no duty to defend an insured, and where no request is made it is not bound in any way by a

lawsuit between the insured and a third party on the ground that it failed to defend.

2. ESTOPPEL — DEFAULT JUDGMENT — COLLATERAL ESTOPPEL.

Collateral estoppel applies to default judgments; however, a default judgment is conclusive only as to matters essential to support the judgment.

3. INSURANCE — ACCIDENTS — INTENTIONALLY INFLICTED INJURIES.

An injury, intentionally inflicted upon another, is no less accidental where it is neither suffered nor caused by the insured.

4. INSURANCE — EXCLUSIONARY CLAUSES — STATUTES.

An exclusionary clause in an automobile insurance policy excluding from liability any coverage required by statute to be included is invalid and unenforceable; an automobile insurance policy may not exclude from coverage liability for intentionally caused harm (MCL 500.3131, 500.3135; MSA 24.13131, 24.13135).

5. INSURANCE — AUTOMOBILES — OWNERSHIP, MAINTENANCE, USE.

There must be a causal connection between the injury sustained and the ownership, maintenance or use of the automobile to sustain a claim under the terms of an automobile insurance policy which provides coverage for injuries arising out of the ownership, maintenance or use of an automobile; the causal connection must be more than incidental, fortuitous or "but for", and the injury must be foreseeably identifiable with the normal use, maintenance or ownership of the vehicle; assault by an armed assailant upon the driver of a vehicle is not the type of conduct "reasonably identifiable" with the use of a vehicle.

*Selby, Dickinson, Pike, Mourad & Brandt* (by *Charles A. Pfeffer)* and *Gromek, Bendure & Thomas* (by *James G. Gross),* for plaintiff.

*Freddie G. Burton,* for Ruby Higginbotham.

Before: BASHARA, P.J., and J. H. GILLIS and W. VAN VALKENBURG,* JJ.

J. H. GILLIS, J. This is an automobile no-fault insurance action. On March 4, 1975, defendant,

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Boyd Higginbotham, estranged husband of defendant-appellant, Ruby Higginbotham, was driving his automobile in pursuit of his wife. She was driving her own automobile. Mr. Higginbotham drove his car into the side of his wife's car, forcing it to the curb. While Mrs. Higginbotham remained trapped in her car, her husband walked over and shot her several times with a revolver, severely wounding her. The parties had separate insurance policies on their respective automobiles issued by plaintiff, Detroit Automobile Inter-Insurance Exchange (DAIIE).

On August 4, 1975, appellant's counsel sent a letter informing plaintiff that appellant had a claim against her husband arising out of the above-mentioned incident.

On August 14, 1975, appellant instituted a lawsuit against her husband for damages caused by the collision and assault.

On September 29, 1975, appellant's attorney notified plaintiff of the lawsuit and of Mr. Higginbotham's failure to respond. On December 1, 1975, plaintiff notified Mr. Higginbotham that no coverage would be afforded him under his insurance policy. Plaintiff stated that its representative would contact him in order to have him sign a reservation of rights agreement. The intended effect of the agreement was to permit plaintiff to defend the action against Mr. Higginbotham without waiving any of its rights or defenses under the insurance contract. When later contacted, Mr. Higginbotham refused to sign the agreement.

Also, on December 1, 1975, plaintiff apprised appellant's attorney of its intention to defend the lawsuit subject to the reservation of rights. Plaintiff requested appellant's attorney to separate the damages caused by the collision from those caused

by the assault. Appellant's attorney refused to do so, claiming "one injury from one assault".

On December 29, 1975, a default was entered against Mr. Higginbotham. On April 1, 1976, plaintiff appeared and moved to set aside the default and sought an order requiring plaintiff to file an appearance and answer. The order was apparently sought as an equivalent to the waiver of rights which Mr. Higginbotham had refused to execute. The motion was denied and a default judgment was entered. The lower court declined to enter the requested order.

While the above events were transpiring, plaintiff, on December 12, 1975, filed the present declaratory action. In order to protect its rights under its contract of insurance with Mr. Higginbotham, plaintiff sought a declaratory judgment that it was not liable under its policy with Mr. Higginbotham for any damage arising out of the latter's *assault* on the appellant.[1]

Appellant answered and filed a counterclaim alleging that plaintiff was required to pay her benefits under *her* insurance contract with the plaintiff. Plaintiff denied any such liability.

On July 1, 1977, appellant filed a motion for summary judgment on the complaint for declaratory judgment pursuant to GCR 1963, 117.2(3), and a second motion for summary judgment on her counterclaim, also pursuant to GCR 1963, 117.2(3). Plaintiff also filed motions for summary judgment on the complaint and counterclaim.

On January 19, 1978, the lower court held that plaintiff was not liable under either policy because appellant's injuries were intentionally inflicted by Mr. Higginbotham and because the claimed inju-

---

[1] Plaintiff does not contest its liability for injuries arising out of the *collision*.

ries did not arise out of the use of an automobile. Plaintiff's motions for summary judgment were granted and appellant's motions were denied. Orders reflecting that disposition were entered on February 24, 1978. Appellant appeals from those orders as a matter of right.

We begin by addressing appellant's contention that plaintiff was estopped from raising the issue of noncoverage in the action for declaratory judgment.

Appellant maintains that plaintiff had a duty to defend Mr. Higginbotham and, because plaintiff elected not to enter and defend the action, plaintiff is bound by the default judgment as to all matters at issue in such action, even though not a formal party, so that plaintiff could not subsequently deny liability pursuant to its claim of non-coverage. This argument is supported by reference to two theories of estoppel.

Initially, we note that appellant's argument is founded upon a factually inaccurate premise. The declaratory action was not instituted subsequent to the default judgment. On the contrary, the declaratory action was filed two weeks before Mr. Higginbotham's default was entered and approximately 3-1/2 months before judgment was entered on the default.

Even were we to assume that the declaratory action was subsequent in time to the default judgment, we, nevertheless, conclude that appellant's contention is without merit.

Appellant's next argument is that plaintiff is bound by the default judgment solely as a result of its failure to defend. We disagree. Absent a request, an insurer has no duty to defend an insured. *American Mutual Liability Ins Co v Michigan Mutual Liability Co,* 64 Mich App 315, 323;

235 NW2d 769 (1975), *Eastman v United States,* 257 F Supp 315, 319 (SD Ind, 1966). In the present case, Mr. Higginbotham failed to send the pleadings to the plaintiff to defend Mr. Higginbotham. Plaintiff's duty to defend not having arisen, its failure to defend cannot give rise to the penalty suggested by appellant.

Appellant alternatively relies on the law of collateral estoppel to support her argument that plaintiff was precluded from raising the issue of noncoverage in the declaratory action. Such reliance is misplaced. Collateral estoppel prohibits parties from relitigating those issues which have previously been decided. See *Howell v Vito's Trucking & Excavating Co,* 386 Mich 37, 42; 191 NW2d 313 (1971). The doctrine of collateral estoppel applies to a default judgment. *Perry & Derrick Co, Inc v King,* 24 Mich App 616; 180 NW2d 483 (1970). The default judgment, however, is conclusive only as to those matters essential to support the judgment. *Perry & Derrick Co, Inc v King, supra,* 620. Here, the original action determined only Mr. Higginbotham's liability to his wife. The issue of noncoverage under Mr. Higginbotham's policy was not raised in that action. Accordingly, it was not a matter essential to support the default judgment. Even assuming for the purpose of argument that plaintiff, by moving to set aside this default, sufficiently participated in the action to become bound by the default decree, the collateral estoppel effect thereof did not extend to the issue of noncoverage under Mr. Higginbotham's policy.

We note that appellant does not claim that plaintiff was or is precluded from raising the issue of noncoverage under her policy.

The question presented is whether the lower court erred in granting summary judgment to

plaintiff on the issues of liability under the respective policies.

The first reason cited by the lower court in support of its grants of summary judgment was that the injuries were intentionally inflicted by Mr. Higginbotham. This proffered reason will not support the lower court's decision.

The fact that the defendant intended to assault the appellant will not preclude her from recovering personal protection insurance benefits under her policy. MCL 500.3105; MSA 24.13105 provides:

"(1) Under personal protection insurance an insurer is liable to pay benefits for accidental bodily injury * * *.

* * *

"(4) bodily injury is accidental as to a person claiming personal protection insurance benefits unless suffered intentionally by the injured person or caused intentionally by the claimant."

The parties do not dispute that appellant neither intentionally suffered nor caused her injuries. Accordingly, we conclude that with respect to appellant's claim for personal protection insurance benefits, her injuries were accidental. See *State Farm Mutual Automobile Ins Co v Coon,* 46 Mich App 503, 506; 208 NW2d 532 (1973), *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526; 280 NW2d 583 (1979). The grant of summary judgment against appellant on the counterclaim cannot be supported on this basis.

Furthermore, the fact that the defendant intended to assault the appellant will not preclude her from recovering residual insurance benefits under the defendant's policy. The "intentional injury" exclusion clause contained in defendant's policy will not effect such preclusion.

MCL 500.3131; MSA 24.13131 requires residual liability insurance coverage for "automobile liability retained by section 3135". MCL 500.3135; MSA 24.13135 states that such automobile liability includes "[i]ntentionally caused harm to persons or property". Where an insurance policy contains an exclusionary clause that was not contemplated by the Legislature, that clause is invalid and unenforceable. *Community Service Ins Co v Shears,* 89 Mich App 372; 280 NW2d 532 (1979), *Detroit Automobile Inter-Ins Exchange v Irvine,* 92 Mich App 371; 284 NW2d 535 (1979). Accordingly, the grant of summary judgment on plaintiff's complaint cannot be supported on this basis.

We next turn to the dispositive issue in the case: did appellant's injuries which resulted from the shooting arise out of the use of a motor vehicle? In order for appellant to recover under either her own or her husband's insurance policy, it is necessary that her injuries arose out of the use of a motor vehicle. MCL 500.3105, MCL 500.3135.

Plaintiff argues that the injuries in question were entirely unrelated to the use of any motor vehicle. Appellant argues, first, that the mere fact that she was an occupant of her automobile at the time she sustained the injuries leads to the conclusion that her injuries arose out of the use of her automobile. MCL 500.3105. Alternatively, she argues that her injuries were the result of one continuous act which had its origin in her husband's use of his motor vehicle. MCL 500.3135.

We find that both of appellant's arguments are without merit. Accordingly, we find that the lower court properly concluded that appellant's injuries did not arise out of the use of a motor vehicle.

The fact that appellant was an occupant of her automobile at the time she sustained her injuries

will not support a finding that her injuries arose out of the use of her motor vehicle so as to entitle her to personal protection insurance benefits. *O'Key v State Farm Mutual Automobile Ins Co,* 89 Mich App 526, 530; 280 NW2d 583 (1979), *Hamka v Automobile Club of Michigan,* 89 Mich App 644; 280 NW2d 512 (1979). See also *Shinabarger v Citizens Mutual Ins Co,* 90 Mich App 307, 314; 282 NW2d 301 (1979). Accordingly, the lower court's grant of summary judgment in plaintiff's favor on the counterclaim was without error.

Cases construing the phrase "arising out of the * * * use of a motor vehicle" uniformly require that the injured person establish a causal connection between the use of the motor vehicle and the injury. See Anno: *Automobile liability insurance: what are accidents or injuries "arising out of the ownership, maintenance, or use" of insured vehicle,* 89 ALR2d 150. Such causal connection must be more than incidental, fortuitous or but for. The injury must be foreseeably identifiable with the normal use of the vehicle. *Kangas v Aetna Casualty & Surety Co,* 64 Mich App 1, 17; 235 NW2d 42 (1975).

Applying this requirement to the present case leads to the conclusion that appellant's injuries did not arise out of Mr. Higginbotham's use of his motor vehicle. An assault by an armed assailant upon the driver of a car is not the type of conduct that is foreseeably identifiable with the *normal* use of a motor vehicle. See *O'Key v State Farm Mutual Automobile Ins Co, supra,* 530.[2] The connection here was simply incidental to Mr. Higginbotham's use of his motor vehicle. Since appellant's

---

[2] We reach this conclusion notwithstanding appellant's allegation that her husband used his vehicle to trap her so as to enable him to effect the assault.

injuries did not arise out of Mr. Higginbotham's use of his motor vehicle, the lower court properly granted plaintiff summary judgment on its complaint for declaratory relief.

We again emphasize that the present case deals only with the issue of plaintiff's liability with respect to appellant's assault-related injuries. As such, it cannot be said that the lower court improperly decided a material issue of fact, *i.e.,* whether appellant's injuries resulted from the collision or from the assault, in granting the motions for summary judgment.

Affirmed. Costs to appellee.